## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|   |   |
|---|---|
| In re: <br><br> HERBERT BECKETT, <br><br> Debtor | Chapter 7 <br> Case No. 10-31440-HJB |

### MEMORANDUM OF DECISION

Before the Court is an amended Motion for Sanctions for Violation of the Automatic Stay (the "Motion for Sanctions") filed by the debtor Herbert Beckett ("Beckett") against Metropolitan Property and Casualty Insurance Co. ("Metropolitan"). In the Motion for Sanctions, Beckett alleges that Metropolitan violated 11 U.S.C. § 362(a) of the Bankruptcy Code[1] by failing to notify the Massachusetts Registry of Motor Vehicles (the "Registry") that Beckett's previously suspended driving privileges in the Commonwealth of Massachusetts should be reinstated. After court argument and a jointly filed statement of stipulated facts, the question left for the Court to decide is relatively simple: was Metropolitan's *inaction* a violation of § 362(a)?

---

[1] See 11 U.S.C. § 101 et seq. All references to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

I. FACTS AND TRAVEL OF THE CASE

On October 20, 2004, Metropolitan recovered a state court judgment against Beckett for property damage resulting from a motor vehicle accident. Post-judgment, Metropolitan instituted a supplementary process action against Beckett in the Commonwealth of Massachusetts District Court Department of the Trial Court, Springfield Division (the "Springfield District Court"). When Beckett failed to appear for an August 11, 2005 hearing, the Springfield District Court issued a *capias*. Beckett had no personal automobile insurance coverage at the time of the accident and was operating an uninsured vehicle. Accordingly, Metropolitan submitted copies of the *capias* and execution to the Registry on August 25, 2005. Pursuant to state law, set forth below, the Registry responded by suspending Beckett's license to operate a motor vehicle in the Commonwealth of Massachusetts.

Approximately five years later, on July 19, 2010, Beckett filed a case under Chapter 7 of the Bankruptcy Code with this Court. On his Schedule F -- Creditors Holding Unsecured Nonpriority Claims -- and on the creditor matrix, Beckett listed both Metropolitan and its attorneys. And both also received notice of the bankruptcy case filing from this Court. In addition, Metropolitan's counsel was served with two suggestions of bankruptcy, one for the suit in which judgment had entered and one for the supplementary process proceeding. Metropolitan did not contact the Registry to notify it of Beckett's bankruptcy case filing or to request that Beckett's license suspension be lifted.

On October 26, 2010, Beckett contacted the Registry by telephone, presumably to find out what steps would be required to reinstate his license. He was told his license would remain suspended until a bankruptcy discharge issued from this Court. The Registry also suggested that Beckett call Metropolitan's counsel. That same day, Beckett telephoned Metropolitan's counsel, relaying the Registry's message. Metropolitan's attorney told Beckett that Metropolitan would not request that the Registry release the license suspension until Beckett's Chapter 7 discharge issued.

Later that same day, Beckett's counsel, Attorney L. Jed Berliner ("Attorney Berliner"), filed the instant Motion for Sanctions.[2] Two days later, on October 28, 2010, Metropolitan's attorney communicated with Attorney Berliner, and without admitting any liability, offered to request that the Registry remove the aforesaid restriction and did so shortly thereafter. And on November 1, 2010, Metropolitan formally responded to the Motion for Sanctions, denying responsibility and any violation of the automatic stay. After two non-evidentiary hearings on the matter, this Court ordered the parties to file a joint statement of agreed facts and took the matter under advisement.[3]

---

[2] The Motion for Sanctions was later amended, but the amendments are immaterial to the issue at hand.

[3] This matter was originally complicated by a similar motion for sanctions against the Registry, which was first heard simultaneously with this matter, and was later set for an evidentiary hearing. Beckett then elected to withdraw the bulk of his claims against the Registry, leaving only a *de minimis* claim against the Registry that the reinstatement fee of $100 violated the automatic stay. The Court subsequently denied that claim against the Registry.

II. <u>POSITIONS OF THE PARTIES</u>

In the Motion for Sanctions, Beckett argues that Metropolitan's inaction, which resulted in his continuing license suspension, violated the automatic stay, particularly in light of Metropolitan's undisputed receipt of notice of his Chapter 7 case filing. He maintains that once Metropolitan was on notice of his bankruptcy case, it had an affirmative and automatic duty to instruct the Registry to remove any restrictions on his file. Beckett describes Metropolitan's failure to do so as a continued collection effort, and thus an automatic stay violation, under First Circuit jurisprudence. In light of this alleged violation, Beckett urges this Court to award sanctions, including actual damages of emotional distress[4] and attorneys' fees, as well as punitive damages.

---

[4] The timing of events colors Beckett's actions and his request for relief.

Beckett's driver's license was originally suspended in August of 2005. He did not file his bankruptcy case for approximately five years and did not approach the Registry for another three months. When Beckett was told by telephone that the Registry would not reinstate his license and that Metropolitan would not send the requested notice to the Registry, Attorney Berliner filed the Motion for Sanctions that very same day -- a surprising dispatch under the circumstances. It is difficult to envision that within the same day in which Beckett was for the first time, postpetition, denied his license reinstatement, he suffered the kind of emotional distress damages cognizable in this Circuit. See Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470, 486 (Bankr. D. Mass. 2005) (citations omitted). When this was raised at oral argument, Attorney Berliner responded that Beckett's emotional distress stemmed from his being denied a "civil right"-- the right to drive an automobile in the Commonwealth of Massachusetts. Even were the Court to recognize the existence of such a novel right in this context, Beckett's initial claim under § 362(k) could only have arisen between the time he was told on October 26, 2010 that his license would not be reinstated and Metropolitan's agreement on October 28, 2010 to write to the Registry -- 2-3 days in comparison with the five years in which his license was suspended prepetition and three months postpetition during which he took no steps to request anyone reinstate it.

Ultimately, this Court will not need to reach the emotional distress claim because it finds and rules, as set forth below, that Metropolitan did not violate the automatic stay.

Metropolitan makes several arguments in its defense. First, it states that under Massachusetts law, only the Registry has the power to suspend and release the suspension of a judgment debtor's driver's license. The Registry's policy is to require the discharge of the judgment in bankruptcy prior to releasing any suspension on a license – a position based on a 1971-72 Attorney General opinion.[5] See Mass. Op. Att'y Gen. No. 6 (Sep. 21, 1971). Metropolitan argues that the Attorney General opinion and Registry policy further demonstrate its good faith and actions in compliance with current law and policy. Finally, Metropolitan argues that regardless of the legal outcome, Beckett's allegations of actual damages, particularly those for emotional distress, are absurd in light of the fact his license was suspended for five years prior to his bankruptcy filing, and Beckett did not even attempt to contact the Registry until more than three months into his bankruptcy case.

III. DISCUSSION

*A. The Automatic Stay*

"The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as 'one of the fundamental debtor protections provided by the

---

But it is worth pausing to note when an award of actual damages, particularly for emotional distress, is requested reflexively and without substantial basis, the credibility of a party and his attorney is reduced and the importance of § 362(a) is denigrated. Section 362(a) ought not to be used to cater to "opportunistic 'victims' with ethereal damages." Adams v. Hartconn Assocs., Inc., et al. (In re Adams), 212 B.R. 703, 712 (Bankr. D. Mass. 1997).

[5] At the risk of being accused of providing the Attorney General of the Commonwealth of Massachusetts with legal advice, the Court respectfully recommends that this 40-year old opinion be reviewed.

bankruptcy laws.'" Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (citing S. Rep. No. 95-989, at 54 (1978); H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 5963, 6296).

The automatic stay provision operates as an injunction against:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> . . .
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a).

The United States Court of Appeals for the First Circuit has described the automatic stay's importance as follows:

> It is intended to give the debtor breathing room by 'stop[ping] all collection efforts, all harassment, and all foreclosure actions.' The stay springs into being immediately upon the filing of a bankruptcy petition: '[b]ecause the automatic stay is exactly what the name implies – 'automatic' – it operates without the necessity for judicial intervention.' It remains in force until a federal court either disposes of the case or lifts the stay. This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing 'different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets.'

Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted). The stay also "protects the estate and gives a trustee the opportunity to marshal and distribute the assets." In re Panek, 402 B.R. 71, 75 (Bankr. D. Mass. 2009) (citing Nelson v. Taglienti (In re Nelson), 994 F.2d 42, 44 (1st Cir. 1993)); In re Rosa, 313 B.R. 1, 6 (Bankr. D. Mass. 2004).

"In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay." Soares, 107 F.3d at 975-76. And in light of this guidance from the First Circuit and its deep set belief in the importance of the automatic stay, this Court has held many times that "the protections afforded by the automatic stay are meaningless if they are not enforced." In re Panek, 402 B.R. at 76; In re Rosa, 313 B.R. at 6. Section 362(k) provides that an injured party may recover actual and punitive damages for violations of the automatic stay. 11 U.S.C. § 362(k).[6] Actual damages include damages for emotional distress. Fleet Mortg. Grp. v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999); In re Panek, 402 B.R. at 76 n.5; In re Rosa, 313 B.R. at 7.

---

[6] Section 362(k) provides:

  (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

  (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

7

*B. Analysis*

A debtor must establish three elements before damages will be imposed for violations of the automatic stay. In re Rosa, 313 B.R. at 6. "First, a violation of the automatic stay must have occurred. Second, the violation must have been committed willfully. Third, the violation must have injured the debtor." Id. (citing Adams, 212 B.R. at 708). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay . . . is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortg. Grp., 196 F.3d at 269. See also In re Rosa, 313 B.R. at 7; Bererhout v. City of Malden (In re Bererhout), No. 09-1314-JNF, 2011 WL 2119007, at *7 (Bankr. D. Mass. May 24, 2011). "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Fleet Mortg. Grp., 196 F.3d at 269. "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. "The creditor need only intend the act itself, it need not intend to violate the stay." In re Rosa, 313 B.R. at 7.

Beckett argues Metropolitan violated the automatic stay by failing to meet its "obligation to notify the Registry to terminate the driver's license suspension" and not acting "to lift the driver's license suspension." Mot. for Sanctions ¶¶ 8, 10. For the proposition that Metropolitan had an "obligation to notify the Registry to terminate the driver's license suspension," Beckett cites to Soares v. Brockton

8

Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997).  See Mot. for Sanctions ¶ 10.

However, Beckett's reliance on Soares is misplaced.  In Soares, a creditor with notice of a debtor's bankruptcy case failed to provide that notice to a state court, which continued to enter orders against the debtor for more than two weeks after the bankruptcy case was filed.  Soares, 107 F.3d at 972-73.  The state court case was live at the time the bankruptcy case was filed, and the court had not yet entered a judgment.  Id.

The facts of this case could not be more different.  All action in the state courts by Metropolitan against Beckett concluded in 2005, at which point Metropolitan notified the Registry of its state court judgment.  It was not until nearly five years later, in 2010, that Beckett filed for relief under Chapter 7.  Unlike Soares, the state courts had entered judgments many years prior to the filing of the bankruptcy case, and Metropolitan had simply handed those judgments over to the Registry, as permissible under Massachusetts state law.  The ability to notify the Registry that Beckett's status had changed was just as available to Beckett as it was to Metropolitan.  And while the Registry might not have properly responded to the advice of either Beckett or Metropolitan in light of the Attorney General Opinion, only Beckett was in a position to compel the Registry to reinstate his driver's license.  Metropolitan's notification to the Registry of Beckett's bankruptcy case filing would, under the Attorney General Opinion, have elicited no action by the Registry.  Accordingly, Metropolitan's failure to act was hardly comparable to the inaction by the creditor in Soares

whose advice to the Massachusetts state court would have halted its further consideration of the action filed by that creditor.  See also In re Wright, No. 09-21247 (RTL), 2010 WL 846920, at *1, *4, *5 (D.N.J. Mar. 9, 2010) (finding under a similar New Jersey statute that Motor Vehicle Services controls the licensing process, not the judgment creditor, and holding an insurance company had no obligation "to contact Motor Vehicle Services or the state court and initiate proceedings to reinstate the Debtor's license. . . .  Nothing in the Bankruptcy Code places the affirmative duty of initiating the debtor's license reinstatement proceedings on the judgment creditor whose judgment underlies the suspension.  The burden is on the debtor and the duty to reinstate the debtor's license lies with the state.").

Beckett's argument that Metropolitan had the power "to lift" the suspension implies that Metropolitan had a power which the Massachusetts State Legislature has vested elsewhere.  Massachusetts General Laws ch. 90, § 22A provides:

> *The registrar, after hearing, shall suspend any license to operate motor vehicles issued to a judgment debtor* in an action brought to recover damages for injury to property arising out of the use, operation or maintenance on the ways of the commonwealth of a motor vehicle or trailer; or, if the judgment debtor is a partnership, a trust, or a corporation, shall suspend all certificates of registration issued to it under this chapter, *if within sixty days after a finding by a court and notification to the registrar by the clerk of court that a judgment has been entered against the judgment debtor in said action, and that the judgment debtor has willfully and intentionally failed to pay an order or orders* consistent with the provisions of chapter two hundred and twenty-four.
>
> This section shall not apply in any case if the registrar is satisfied as aforesaid that the judgment debtor was, at the time such injury occurred, insured against loss or damage on account of his legal liability for such injury by or under a policy of insurance issued by an insurance company duly authorized to transact business in the

10

commonwealth under chapter one hundred and seventy-five, to the amount or limit of at least five thousand dollars. Nor shall this section apply in the case of a judgment rendered in an action brought to recover damages for death or bodily injuries as well as damages for such injury to property, unless a separate finding or verdict for such property damages has been entered or returned in such action, in which case the amount of damages so awarded shall, for the purposes of this section, be deemed the amount of the judgment. The registrar shall not impose such suspension if he is satisfied that indemnity against such judgment will be furnished by the judgment debtor to the commonwealth, or a city or town under section one hundred A of chapter forty-one.

If a judgment debtor satisfies the clerk of the court in which the order was issued that said judgment debtor is unable to locate the judgment creditor or his legal representative, he shall deposit with such clerk the full amount of the order or orders and said clerk shall give him a receipt therefor reciting such facts. Upon presentation to the registrar, such receipt shall be evidence of satisfaction, release, or discharge of the obligation under any such order.

*If the license of a judg[e]ment debtor has been suspended pursuant to this section, the judg[e]ment debtor may apply to the registrar for reinstatement of the license. The registrar shall reinstate the license if the judg[e]ment debtor has satisfied the judg[e]ment, made a deposit with the clerk of the court for the amount of the judg[e]ment, or has not willfully or intentionally failed to comply with the provisions of chapter two hundred and twenty-four.*

Mass. Gen. Laws ch. 90, § 22A (2001) (emphasis added) ("Section 22A"). As obvious from the first and final paragraphs of Section 22A, only the Registry has the power to suspend and reinstate the license of a judgment debtor like Beckett and only such a judgment debtor may initiate the process of seeking reinstatement.

Finally, an additional case cited by Beckett in support of his view is not only inapposite, but actually supports the contrary view. Mot. for Sanctions ¶ 9 (citing Jessamey v. Town of Saugus (In re Jessamey), 330 B.R. 80 (Bankr. D. Mass. 2005)). Jessamey and its progeny address a completely separate

11

provision of state law. Under Massachusetts General Laws ch. 60A, §2A, local tax collectors and commissioners of revenue may request that the Registry decline the renewal of a taxpayer's driver's license and automobile registrations where local excise taxes are unpaid. However, contrary to the terms of the statute now before the Court, ch. 60A, § 2A places the full burden on the "local tax collector or commissioner of revenue to notify the registrar forthwith that such matters have been disposed of in accordance with law." Mass. Gen. Laws ch. 60A, §2A (2009). See also Jessamey, 330 B.R. at 84-85 (finding the statute places the power with the local tax collector and thus creates a "debt collection program" in its favor and implemented jointly by local municipalities and the state); Bererhout v. City of Malden (In re Bererhout), 431 B.R. 42, 43, 50 (Bankr. D. Mass. 2010); Bererhout v. City of Malden (In re Bererhout), No. 09-1314-JNF, 2011 WL 2119007, at *6-7. In the case now before the Court, the Massachusetts Legislature assigned the burden of notification upon the driver seeking reinstatement.

IV. CONCLUSION

While the protections of the automatic stay are unquestionably among the most important offered to a debtor under the Bankruptcy Code, nothing in the Bankruptcy Code or First Circuit jurisprudence placed an affirmative duty on Metropolitan to notify the Registry of Beckett's Chapter 7 filing or to take action to reinstate his driver's license.

Having found that Metropolitan has not acted (or failed to act) in violation of the automatic stay under § 362(a), the Court need not go further to determine issues of willfulness or damage.

Accordingly, the Motion for Sanctions must be DENIED. A separate order consistent with this Memorandum will issue accordingly.

DATED:    July 7, 2011                    By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge